UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-20878-CIV-KING

JACKSON B. GILBERT,

    Plaintiff,

v.

ESPIRITO SANTO BANK OF
FLORIDA n/k/a BRICKELL BANK,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COMPLAINT OR STAY PROCEEDINGS

THIS CAUSE comes before the Court upon Defendant ESPIRITO SANTO BANK OF FLORIDA's Motion to Dismiss Complaint or Stay Proceedings (the "Motion") (DE 8), filed April 18, 2016.[1] Therein, Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Complaint (DE 1) for failure to state a claim upon which relief can be granted or, in the alternative, to stay the proceedings pending the approval of the Federal Deposit Insurance Company ("FDIC").

---

[1] The Court has also considered Plaintiff's Response in Opposition to Defendant's Motion to Dismiss Complaint or Stay Proceedings (DE 11), filed May 16, 2016, and Defendant's Reply in Support of Motion to Dismiss Complaint or Stay Proceedings (DE 12), filed May 26, 2016.

1

## BACKGROUND[2]

Espirito Santo Group is a group of banking and financial companies which includes Defendant Espirito Santo Bank of Florida. On October 27, 1989, Plaintiff Jackson Gilbert received a letter from Espirito Santo Group offering him a partnership position. Pursuant to the offer letter, Gilbert began working for Espirito Santo Group with a focus on expansion to European markets and provision of services to various banking and financial entities such as Defendant Espirito Santo Bank of Florida. Gilbert worked pursuant to the original offer letter and extensions thereof from November 1989 through October 30, 2003, approximately thirteen years. At some point, Gilbert began serving as a member of the board of directors of Defendant Espirito Santo Bank of Florida.

On November 30, 2000, the board of directors of Espirito Santo Bank of Florida passed a resolution which awarded Gilbert a pension. It provided for $50,000.00 per year to be paid to Gilbert for life upon his retirement from work with Espirito Santo Group and to his wife for life if she survives him. On March 15, 2003, the pension was increased to $60,000.00 per year. This pension was recorded as a liability on Espirito Santo Bank of Florida's books and approved by the auditors and regulators. To fund it, a retirement reserve was created which accrued $5,000.00 per month. Each of Espirito Santo Bank of Florida's audited statements provided a specific footnote with calculation for the future liability of Gilbert's pension.

On November 1, 2003, Gilbert retired from full-time work. Upon retiring, Gilbert began receiving his pension from Espirito Santo Bank of Florida in the amount of

---

[2] Gilbert's complaint states the following facts, which this Court accepts as true.

$5,000.00 per month, along with medical insurance coverage and life insurance coverage. On or about October 30, 2003, Gilbert entered into an independent part-time consulting agreement with Espirito Santo Group. Throughout the duration of the part-time contract, Gilbert received his pension. On March 20, 2013, Gilbert stepped down from the board of directors of Espirito Santo Bank of Florida and, on June 30, 2013, the part-time contract was terminated by mutual agreement. By letter dated November 9, 2015, Gilbert received a notice of termination of his pension and insurance benefits.

Gilbert's Complaint states three counts: (1) breach of contract; (2) violation of the Employee Retirement Income Security Act ("ERISA"); and (3) promissory estoppel. Defendant Espirito Santo Bank of Florida claims that Gilbert has failed to state a claim upon which relief can be granted and, in the alternative, asks that this matter be stayed pending FDIC approval.

## LEGAL STANDARD

In deciding a motion to dismiss, the Court must accept a complaint's allegations as true and construe them in the light most favorable to the Plaintiff. *See M.T.V. v. Dekalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1156 (11th Cir. 2006). "In analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

A complaint must contain short and plain statements of the grounds for the court's jurisdiction, the cause of action, and the relief sought. Fed. R. Civ. P. 8(a). Under the heightened pleading standards set forth by the Supreme Court in *Bell Atl. Corp. v*

3

*Twombley*, 550 U.S. 544 (2007) and *Ashcroft v Iqbal*, 556 U.S. 662 (2010), there must be "enough facts to state a claim to relief that is plausible on [the] face" of the complaint. *Twombley*, 550 U.S. at 570. A plaintiff must plead sufficient facts to show relief and "more than labels and conclusion . . . a formulaic recitation of the elements of a cause of action will not do." *Id.*

## DISCUSSION

1. **Motion to Dismiss**

    a. <u>Breach of Contract</u>

Defendant maintains that, when Gilbert took on the part-time consulting position, the board of directors passed a resolution which granted him a consulting fee, not a pension. However, at this stage of the proceedings, this Court accepts the well-pled facts as true and declines to interpret various contracts, resolutions, and interactions. Nonetheless, the Court notes that Gilbert attaches to his complaint a November 30, 2000 resolution of the board of directors of Espirito Santo Bank of Florida which provides for an annual pension of $50,000.00 to Gilbert and his wife for life. In addition, Gilbert attaches to his complaint a letter from Ricardo Espirito Santo Salgado, the President of Espirito Santo Financial Group, dated March 15, 2003, which states that, beginning on November 1, 2003, Gilbert is entitled to receive the pension arrangement set forth in the agreement of February 18, 1998. This more than adequately pleads the existence of a pension contract.

### b. ERISA

Defendant claims that the alleged pension plan is a "top hat" plan, which is not subject to ERISA regulations.[3] In response, Plaintiff correctly states that the existence (or non-existence) of a top hat plan is a question of fact not to be resolved on a motion to dismiss. *See MacDonald v. Summit Orthopedics, Ltd.*, 681 F. Supp. 2d 1019, 1024 (D. Minn. 2010).[4]

### c. Promissory Estoppel

The elements of promissory estoppel are: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon. *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006) (quoting *FCCI Ins. Co. v. Cayce's Excavation, Inc.*, 901 So.2d 248, 251 (Fla. 2d DCA 2005)). Gilbert's complaint states facts which show that Gilbert was promised a pension, that Gilbert reasonably relied on that promise, and that Defendant's change of position, characterizing the pension as a fee, was to his detriment.

---

[3] Defendant also maintains that Gilbert's complaint does not show that administrative remedies are exhausted. However, Defendant does not show that administrative remedies exist.

[4] In any event, Gilbert's complaint states that the pension was regularly funded and not derived from a deferred salary. Accepting those facts as true, the pension is not a "top hat" plan. *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006) (citing 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1)).

2. **Motion to Stay**

   a. "Golden Parachute" Regulations

At the motion to dismiss stage, this Court declines to consider whether the pension is a "golden parachute" as defined by FDIC regulations. Nonetheless, the "golden parachute" regulations, as applied to the well-pled facts of Gilbert's complaint, are inapplicable. The "golden parachute" regulations under the Federal Deposit Insurance Act, 12 U.S.C. § 1828(k), ("FDIA"), and the associated FDIC promulgated regulations relating to golden parachutes in 12 C.F.R. §§ 359.0-359.7, are aimed at preventing troubled banks from making "golden parachute" payments, as defined by sections 359.1(f) and 359.2, to terminated employees without first receiving permission from the FDIC. *Harrison v. Ocean Bank*, No. 10-23138-CIV, 2011 WL 2607086, at *2 (S.D. Fla. June 30, 2011), *aff'd*, 614 F. App'x 429 (11th Cir. 2015). These regulations seek to prevent troubled banks from draining their assets through payments to high-ranking employees. *Id.* Section 359.1(f)(1) defines a "golden parachute" payment and, most importantly, defines such payments as follows:

> Any payment (or any agreement to make any payment) in the nature of compensation by any insured depository institution or an affiliated depository institution holding company for the benefit of any current or former [institution-affiliated party] pursuant to an obligation of such institution or holding company that . . . is received on or after, or made in contemplation of . . . [t]he insolvency (or similar event) of the insured depository institution . . . [t]he appointment of any conservator or receiver for such insured depository institution . . . or [a] determination by the insured depository institutions or depository institution holding company's appropriate federal banking agency, respectively, that the insured depository institution or depository institution holding company is in a troubled condition.

12 C.F.R. § 359.1 In other words, to qualify as a "golden parachute" the payment or agreement to make payment must have been made when the writing was already on the wall: the insured depository institution must have been (1) in insolvency or a similar event; (2) appointed a conservator or receiver; or (3) determined to be in a troubled condition. Gilbert's complaint states that Espirito Santo Bank of Florida made the pension agreement years before recent financial troubles struck. Regardless, as already stated, the consideration of a potential "golden parachute" payment is not proper on a Rule 12(b)(6) motion.

### b. Consent Order

Gilbert's complaint makes no mention and the Court declines to take judicial notice of a consent order. Nonetheless, upon review, Defendant's reference to a consent order appears to be impertinent. Defendant states that, on August 14, 2014, a consent order was entered by the FDIC which prohibits Defendant from making transactions, absent FDIC consent, "if the proceeds of the transaction are used for the benefit of, or transferred to [an] 'affiliate,' or the transaction in any manner directly or indirectly benefits the 'affiliate' of [T]he Bank, serves to reduce the liability or obligations of the 'affiliate' of [T]he Bank, or otherwise serves to benefit the 'affiliate' of [T]he Bank." However, upon independent review, the consent order referenced by Defendant permits the "continued provision of and payments for services provided by affiliates under pre-existing contracts in the normal course of business." Gilbert's complaint pleads facts showing that the pension contract was made in the normal course of business.

## CONCLUSION

Upon review, the Court finds that the well-pled facts of the complaint are sufficient to support each cause of action.

Accordingly, it is **ORDERED, ADJUDGED**, and **DECREED** that Defendant's Motion to Dismiss or Stay **(DE 8)** be, and the same is, hereby **DENIED** and Defendants shall **ANSWER** the Complaint **(DE 1)** within **ten (10) days** of the date of this Order.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and Untied States Courthouse, Miami, Florida, this 24th day of August, 2016.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: **Clerk of Court**
**All counsel of record**